UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

-----------------------------------------------------------------------x

COMMON CAUSE OF COLORADO, on behalf of itself    :
and its members; MI FAMILIA VOTA EDUCATION      :
FUND; and SERVICE EMPLOYEES INTERNATIONAL   :
UNION, on behalf of itself and its members,         :

                                                     :      Civil No. _____

                  Plaintiffs,           :

                                                       :

       vs.                                             :

                                                       :

MICHAEL COFFMAN, in his official capacity as       :
Secretary of State for the State of Colorado,        :

                                                     :

                  Defendant.         :

-----------------------------------------------------------------------x

---

## COMPLAINT

---

     Plaintiffs, by their attorneys, and for their Complaint against Defendant, allege as follows:

### INTRODUCTION

     1.      Plaintiffs bring this action to prevent the disenfranchisement of their members and citizens they registered to vote as a result of recent purges of Colorado's voter rolls conducted in violation of federal law. The deadline for all but a limited category of purges passed on August 4, 2008 with respect to the general election and on May 13, 2008 with respect to the primary election. Because Defendant has not notified voters whose names were removed from the rolls, and because more than two months elapsed before the Defendant notified voters whose names were removed from the voter rolls or publicly disclosed any information regarding these purges, plaintiffs were unable to uncover these violations and take actions to remedy them sooner.

Dockets.Justia.com

Given the proximity to the election, plaintiffs initially seek only a narrow remedy to ensure that no additional voters are wrongfully removed from the voter rolls between now and November 4, 2008 and that voters wrongfully purged be reinstated so that they can cast ballots that will count. Ultimately, plaintiffs seek to enjoin Defendant from continuing to undertake purge programs that do not adhere to the protections mandated by the National Voter Registration Act of 1993 ("NVRA").

2. Plaintiffs challenge two types of registration cancellations (or "purges") as violative of the NVRA.

a. First, Defendant has removed tens of thousands of voters from the official voter rolls after May 13, 2008, in violation of the NVRA which bans systematic removal of voters from the rolls within 90 days of a federal primary or general election, except for narrowly specified reasons. Defendant issued a statement on October 9, 2008 admitting that at least 12,000 voters have been purged from the rolls within this period for reasons not permitted by the NVRA. Additionally, Plaintiffs have developed substantial evidence that during the NVRA's 90-day no-purge period, defendant Secretary of State actually removed more than 20,000 voters from Colorado's voting rolls in this period for reasons other than that the registrant has died, been convicted of a felony, adjudged incapacitated, or requested removal. Plaintiffs fear that the systematic removal of voters will continue up to November 4, 2008, risking the disenfranchisement of more voters.

b. Second, Defendant has implemented a Colorado law requiring cancellation of new registrations when a non-forwardable notice sent by mail to the voter is returned as undeliverable within 20 days of receipt of the registration application. As recently determined by the United States District Court for the Eastern District of

Michigan, a state law mandating cancellation of new voter registrations because a mailed notice was returned as undeliverable violates the NVRA and cannot be enforced. Colorado's law is facially invalid because it conflicts with the NVRA. It is also invalid because it has been applied to remove registered voters from the voter rolls in violation of the NVRA. These 20-day cancellations have removed thousands of eligible voters: By Defendant's own admission, 1,136 voters were purged between July 21 and October 9, 2008 under Colorado's 20-day cancellation provision, and Defendant's records show that 3,291 voters have been purged since August 2007 on the ground that notices sent to the voter were returned as undeliverable.

Therefore action is needed by this Court to enforce the NVRA, reinstate wrongfully purged voters, enjoin Defendant from further purging, and ensure that those voters will have the opportunity to cast their ballots in the upcoming federal election.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as a case arising under the laws of the United States; under 28 U.S.C. § 1343(a)(3) and (4), as a case seeking equitable and other relief pursuant to an act of Congress providing for the protection of the right to vote; and under 42 U.S.C. § 1983, as a case seeking to enforce rights and privileges secured by the laws of the United States.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim have occurred or will occur in this district.

## PARTIES

5.      Colorado Common Cause ("Common Cause") is a non-profit organization whose mission is to promote fair and honest elections and to protect the civil rights of all Americans." Common Cause has 4,000 dues-paying members and 8,000 online members within the state of Colorado, many of whom are registered Colorado voters and who regularly vote in Colorado elections.  As part of its goal to promote open, honest and accountable government, Common Cause is committed to ensuring that every American, and Common Cause member, has the right to vote and the opportunity to exercise that right.

6.      Among other voter protection programs, in advance of the 2008 general election Common Cause implemented a program called "Just Vote Colorado" with the aim of monitoring the 2008 election and writing a post-election report about how Colorado's election laws impacted the race.  Common Cause also works with election officials and organizations to resolve problems that may plague Coloradan's ability to vote.  The purges that are ongoing in Colorado thus directly impact the mission, time, energy, and resources of Common Cause. Common Cause's resources are limited, and the amount of time our staff is needed to investigate and take measures to counteract the State's unlawful purges forces us to divert necessary resources from our voter protection and education activities.  The purges also injure Colorado Common Cause by unlawfully purging our individual members from the rolls, or by subjecting them to imminent risk that they will be purged unlawfully from the rolls and not permitted to vote in the upcoming November 4, 2008 general election or subsequent elections.  The injury has the potential to continue, furthermore, after the November 4, 2008 election if the State's purging practices are not discontinued, because our members may be unlawfully stricken from the rolls in the future.

22842582v5

7.      Plaintiff Mi Familia Vota ("Mi Familia") is a non-partisan civic engagement campaign working with the Latino and immigrant families to bring positive change to their communities and improve their lives.  Part of Mi Familia's mission is to empower members of the Latino and immigrant communities by registering eligible citizens to vote and encouraging registered voters to participate in the electoral system.

8.      Mi Familia has expended significant resources and staff time on voter registration activities in advance of the November 4, 2008 general election.  These activities have included outreach through churches and community organizations, outreach to newly sworn-in citizens, and door-to-door canvassing.  In the past six months, Mi Familia has registered approximately 2,300 persons to vote.  Mi Familia plans to continue registering voters for future federal elections.

9.      The acts complained of herein have harmed, and unless enjoined will continue to harm, Mi Familia.  Defendant's unlawful purging of large numbers of registered voters from the rolls harms Mi Familia because it undermines the organization's efforts to register eligible voters and to conduct voter education activities.  Defendant's actions further harm Mi Familia because they create an uncertainty about the lawfulness of the entire registration process, which will make it more difficult for the organization to fulfill its mission of registering and engaging voters in the democratic process.  Additionally, Defendant's unlawful purges harm Mi Familia because it is likely that some eligible voters who were registered by Mi Familia staff or volunteers will be or have already been purged unlawfully from the rolls, and will not be permitted to vote in the upcoming November 4, 2008 general election or in subsequent elections.  Finally, Mi Familia has limited resources, and there is an imminent threat that Defendant's unlawful actions will

5

require Mi Familia to spend resources and time taking measures to counteract the unlawful purges, and divert resources from planned voter education efforts.

10.     The rights this suit seeks to vindicate are germane to the purposes of Mi Familia.

11.     Plaintiff Service Employees International Union ("SEIU") is a labor union representing employees working in the fields of healthcare, property services and the public sector.  SEIU has approximately 10,000 members and represents workers across the state of Colorado.  Many of SEIU's members are registered to vote or have sought to register to vote.  SEIU is committed to ensuring that every American, including every SEIU member, has the right to vote and the opportunity to exercise that right.  SEIU's Mission Statement in the 2008 Constitution and Bylaws states: "We must build political power to ensure that workers' voices are heard at every level of government to create economic opportunity and foster social justice."

12.     Over the course of the last year, SEIU has devoted significant time, energy and resources to registering voters in Colorado.  SEIU and its staff are committed to registering as many eligible voters as possible, and registered substantial numbers of new voters in Colorado during this past year.  SEIU plans to continue registering voters in Colorado for future federal elections.  SEIU's voter registration efforts require the expenditure of staff time and financial resources.

13.     The acts complained of herein have harmed, and unless enjoined will continue to harm, SEIU and its members.  Defendant's unlawful purging of large numbers of registered voters from the rolls harms SEIU because it undermines the organization's efforts to register eligible voters and to conduct voter education activities.  SEIU has limited resources, and Defendant's actions have required SEIU to expend its resources investigating and taking measures to counteract the unlawful purges, diverting resources from other planned voter

6

education activities. SEIU is further harmed by Defendant's actions because it is likely that, as a result of Defendant's actions, some eligible voters who were registered by SEIU staff, will be or have already been purged unlawfully from the rolls and not permitted to vote in the upcoming November 4, 2008 general election. SEIU is also harmed because Defendant's unlawful purges cast a cloud of uncertainty over SEIU's registration efforts and there is an imminent and likely threat that Defendant's unlawful activity will adversely affect SEIU's ability to engage newly registered voters in the political process and its future efforts to register new voters.

14. SEIU and its members are further harmed by Defendant's actions because there is an imminent threat that, as a result of Defendant's actions, some eligible voters who are SEIU members will be or have already been purged unlawfully from the rolls and not permitted to vote in the upcoming November 4, 2008 general election.

15. The rights this suit seeks to vindicate are germane to the purposes of SEIU and the claims alleged herein do not require the participation of individual members of SEIU.

16. Defendant Mike Coffman ("Coffman") is sued in his official capacity as the Secretary of State of the State of Colorado. His official residence is 1700 Broadway, Denver, CO 80290. In his capacity as Secretary of State, Defendant Coffman is the chief election officer for the state of Colorado. C.R.S. 1-1-107. He is responsible, *inter alia*, for supervising the conduct of elections, enforcing election laws, coordinating the state's responsibilities under the Help America Vote Act of 1993 ("HAVA"), and promulgating rules and regulations for the administration and enforcement of the election laws. *See id.* Defendant Coffman is also responsible for "coordinat[ing] the responsibilities of the state of Colorado under the federal 'National Voter Registration Act of 1993.'" *Id.* 1-1-107 (1)(d); *see* 42 U.S.C. § 1973gg-8. He is also required to "implement, in a uniform and nondiscriminatory manner, a single, uniform,

7

official, centralized interactive, computerized statewide voter registration system . . . contain[ing] the name and registration information of every legally registered voter in the state and [assigning] a unique identifier to each legally registered voter."  C.R.S. 1-2-301.

**LEGAL BACKGROUND**

**I.      DEFENDANT'S PURGE OF VOTERS WHOSE REGISTRATION NOTICES ARE RETURNED WITHIN 20 DAYS OF REGISTRATION**

17.      Under Colorado's Election Law and the NVRA, a qualified Colorado citizen may register to vote in person at the county or city clerk's office, designated voter registration agencies, facilities that provide local driver's license examinations, and other government offices or by mail, including through an independent voter registration drive. *Id.* 1-2-213, 501, 504(1); *see* 42 U.S.C. §§ 1973gg-2, 1973gg-3, 1973gg-5.  Regardless of which method of registration a person chooses, Section 8 of the NVRA requires Colorado's election officials to "insure that any eligible applicant is registered to vote in an election" whenever a valid voter registration form is received or postmarked on or prior to 30 days before the date of the election.  42 U.S.C. § 1973gg-6(a)(1).  In accordance with this requirement, Colorado law provides that a person is registered to vote in an election if the registration application is (a) accepted by a driver's license examination facility or voter registration agency no later than twenty nine days before the election; (b) postmarked no later than twenty nine days before the election; (c) in any other case, received by the county clerk no later than twenty nine days before the date of the election. C.R.S. 1-2-508(1).  The effective date of a voter's registration is (a) the day that it is completed at the county clerk's office, driver's license examination facility, or voter registration agency or (b) the day that the mailed application form was postmarked or received by the county clerk – whichever is earlier.  *Id.* 1-2-508(2).

8

18.     Regardless of which method of registration a person chooses, Section 8 of the NVRA requires Colorado's election officials to "insure that any eligible applicant is registered to vote in an election" whenever a valid voter registration form is received or postmarked on or prior to 30 days before the date of the election.  42 U.S.C. § 1973gg-6(a)(1).  In accordance with this requirement, Colorado law provides that a person is registered to vote in an election if the registration application is (a) accepted by a driver's license examination facility or voter registration agency no later than twenty nine days before the election; (b) postmarked no later than twenty nine days before the election; (c) in any other case, received by the county clerk no later than twenty nine days before the date of the election.  C.R.S. 1-2-508(1).  The effective date of a voter's registration is (a) the day that it is completed at the county clerk's office, driver's license examination facility, or voter registration agency or (b) the day that the mailed application form was postmarked or received by the county clerk – whichever is earlier.  *Id.* 1-2-508(2).

19.     Colorado law requires the county clerk to "verify that the application is complete and accurate."  If the application is complete and accurate, the clerk enters the voter's information on the official list of registered voters and is required to notify the applicant of the disposition of the application within 10 business days of receipt of the application by nonforwardable mail.

20.     If the notification is returned to the county clerk as undeliverable within 20 business days of receipt of the registration application, Colorado law requires the cancellation of the registration, even of an otherwise eligible voter.  *Id.* 1-2-509(3).  Thus, under Colorado law, a voter who submits an application for registration is placed on the list of official voters upon

receipt of the application and subsequently removed from that list if the notification is returned as undeliverable.

## II. DEFENDANT'S PURGE OF VOTERS WITHIN 90 DAYS OF THE NOV. 4, 2008 GENERAL ELECTION

21.     The NVRA requires that Colorado and Defendant Coffman "complete, *not later than 90 days prior to the date of a primary or general election for Federal office*, any program the purpose of which is to systematically remove the names of ineligible voters from the official list of eligible voters." 42 U.S.C. § 1973gg-6(c)(2)(A) (emphasis added). A voter can only be removed during this period upon the voter's request, disenfranchising criminal conviction, determination of incompetence, or death within that period. *Id.* § 1973gg-6(c)(2)(B).

22.     Colorado law establishes list maintenance procedures that comply with the NVRA ban on systematic purges within 90 days of a federal election. Under Colorado law, the county clerk and recorder shall send all registered and eligible voters in the county a "voter information card" ("card") which includes the elector's name, address, precinct number, and polling place. The card shall be mailed by forwardable mail to all active voters and by non-forwardable mail to inactive voters. *Id.* 1-2-605(1)(a)(I). An active voter may be determined to be inactive if the card is returned to the county clerk as undeliverable or if she failed to vote in a general election. *Id.* 1-2-605(1)(c) & (2). An inactive voter may change her status to active if she updates her registration information with the county clerk; votes in an election conducted by the county clerk; or completes, signs, and returns a confirmation card. *Id.* 1-2-605(4). If the county clerk and recorder receives no response to the confirmation card and the elector has been designated "Inactive" for two general elections, the county clerk shall cancel the registration of the elector. *Id.* 1-2-605(7).

10

23.     Colorado law also provides that the county clerk or secretary of state must cancel the registration of any elector who voluntarily withdraws her registration, *id.* 1-2-601, is discovered to be deceased, *id.* 1-2-602, is discovered to have registered to vote in another county, *id.* 1-2-603, or who has been convicted of a felony. *id.* 1-2-606; see *id.* 1-2-103(4) (providing that no person serving sentence or parole for a felony shall be eligible to vote).  Colorado law does not specify whether or not cancellation on any of these grounds may occur within 90 days of a federal election.

## FACTUAL BACKGROUND

24.     On October 9, 2008, the *New York Times* reported that 37,000 voters had been purged from the Colorado's voter registration rolls in the three weeks after July 21, 2008.  That same day, Defendant Coffman issued a News Release stating that 14,049 voters had been removed from Colorado's statewide voter database between July 21, 2008 and October 9, 2008.  According to Coffman, that number included 1,145 deceased voters, 6,572 voters who had moved out of the county or state, 4,434 voters who were listed in duplicate, 544 individuals with felony convictions, 203 withdrawn applications, 1,136 who "failed 20-day period", and 15 removed for other reasons.  *See* News Release, State of Colorado, Department of State, Mike Coffman, Secretary of State, Oct. 9, 2008.

25.     Although Defendant Coffman's News Release suggested that the *New York Times*' reported number may have been too high, it constitutes an admission that many voters had been purged within the 90-day window for reasons not permitted by the NVRA.  Indeed, of the 14,049 voters that Defendant admitted were purged, only 1,892 were purged because they had died, were convicted felons, or had withdrawn their registrations, the three potential exceptions to the NVRA's 90-day prohibition on voter purges.

11

26.     In response to this information, plaintiffs retained an expert to conduct an independent analysis of the purge.  Professor Jonathan Nagler, a national expert on voter registration at New York University, analyzed a number of sources of data provided by Defendant's office and determined that Defendant may have purged more than 20,000 voters within the 90-day no-purge period.

27.     Specifically, Professor Nagler compared two copies of the state database of registered voters – one from August 15, 2008 and another from October 13, 2008.  Plaintiffs' counsel obtained each of these official copies of the state database from Defendant's office pursuant to a public records request.  By comparing the voter ID numbers, Professor Nagler discovered that 14,859 voters who were registered as of August 15 had had their voter registration records removed from Colorado's voter registration database as of October 13.  Using the numbers from Defendant Coffman's October 9 News Release, Professor Nagler estimated that no more than 1,892 voters had been purged for withdrawal, death, or felony conviction, and that the remaining 12,967 had been removed for other reasons, in violation of the NVRA's 90-day ban on systematic purges.

28.     Although the 90-day window with respect to the general election begins on August 5, not August 15, the August 15 list was the only one made available by Defendant.  In order to account for the missing 10 days of the period, Professor Nagler compared the number of voters with effective registration dates between July 31 and August 14 with the total increase in Colorado's voter registration rolls in that time.  Professor Nagler's comparison reveals that 12,072 voter records appear to have been purged between July 31 and August 15.

29.     Taken together with the purges between August 15 and October 13, Professor Nagler concludes that as many as 26,931 voters were purged between  July 31 and October 13.

30.      In response to a public records request, Defendant provided Plaintiffs with a list of all 129,727 voters purged from the voter rolls between August 2007 and September 25, 2008, broken down according to the purported reason for the purge.  The reasons listed by the Defendant were: conversion (data did not match the state list), moved, duplicated, failed 20 day, felon, withdrawn, inactive citizen, not a citizen, voter fraud.

31.      According to this information, between August 5, 2008, and September 25, 2008, 10,779 voters were removed from Colorado's voting roles, of whom only 2,397 were removed because they were deceased, were convicted felons, or had voluntarily withdrawn their registration.  The remainder were purged for other reasons, including 886 who were purged because they "failed 20-day period."

32.      The Defendants purge data also revealed that, between May 13, 2008 and August 4, 2008, within the 90-day window for Colorado's August 12, 2008 primary election, a full 27,771 voters were removed from the voter registration list, of whom only 4,855 were removed as felons, deceased persons, or persons who requested withdrawal.  In addition, 1,415 were removed under the "Failed 20 day" heading.

33.      On information and belief, on October 23, 2008, at a meeting attended by Defendant and representatives of the two major Colorado political parties, representatives of the Colorado Republican Party stated that they had provided Defendant's office with a list of approximately 17,000 names of voters who reportedly had duplicate registration records in the statewide computerized voter registration system.  The Colorado Republican Party stated that they had asked Defendant to purge those names from the voting rolls.

34.      In the course of these purges, eligible voters have been removed from the rolls.

22842582v5

35.     Crystal Newberry, a resident of Boulder County moved to Colorado in August 2006.  She has resided at the same address ever since.  She first registered in 2007 and updated her registration in September 2008 from the permanent mail-in ballot list.  She retains the receipt given to her from this transaction.  She never received any notice of a problem with her registration.  Nevertheless, her name dropped off the Colorado registration list between August 15 and October 13, as confirmed by Professor Nagler's analysis.  See Exhibit 1.  When she telephoned the county clerk's office, a clerk confirmed that her registration had been "cancelled" for an unknown reason.  The clerk then told her that she would be "reinstated."

36.     John Patrick Joyce, a resident of Larimer County moved to Colorado in June 2008.  In August, he registered to vote during voter registration drive.  He never received any letter or notice from the election office suggesting there was any problem with his application.  He is eligible to vote.  He is not aware of any trouble with mail delivery at his residence.  Nevertheless his name appeared on the list the state provided of registrations cancelled between August 2007 and September 25, 2008 with a notation indicating the 20-day notice as the reason.

37.     Linda Townsend Johnson is a resident of El Paso County.  She moved to Colorado in January 2008.   She registered to vote in May at a shopping mall and received her voter registration card in the mail. Her husband, James Edward Johnson registered at the same time, and also received a card. Though they never received any notice of a problem with their voter registrations, the Johnson's names disappeared from the state's registration roles between August 15 and October 13, as confirmed by Professor's Nagler's analysis.  See Exhibit 1. When Mr. Johnson telephoned the county clerk, he was told that he and his wife were not registered to vote.  According to the clerk, they had been "purged from the list" because "they didn't have any

address on file." The Johnsons went to the County Clerk's office where a staff member looked up their records, determined that they were not registered and "reinstated" them.

## CLAIMS

## COUNT I

## <u>(Violation of the NVRA and 42 U.S.C. § 1983 – Purging Procedure)</u>

38.     Plaintiffs repeat and reallege the preceding allegations as though fully set forth herein.

39.     The NVRA prohibits a state from purging any voter from the official list of eligible voters later than 90 days before the date of a primary or general election for Federal office unless the voter has deceased, been convicted of a felony or declared incapacitated, or voluntarily withdrawn her registration during that period.  *Id.*, § 1973gg-6(c)(2).

40.     In violation of § 1973gg-6, Defendant systematically has purged voters from the official list of eligible voters for reasons other than request, conviction, adjudication of incapacitation, or death of the registrant after May 13, 2008 – within 90 days of Colorado's August 12, 2008 primary election.

41.     In violation of § 1973gg-6, Defendant systematically has purged voters from the official list of eligible voters for reasons other than request, conviction, adjudication of incapacitation, or death of the registrant after August 4, 2008 – within 90 days of the November 4, 2008 general election.

42.     Defendant's violation has continued beyond October 4, 2008 – 30 days before the November 4, 2008 general election.

43.     Defendant's unlawful purges disenfranchise members of the communities that Plaintiffs represent and serve, and deprive the members of Common Cause and SEIU of their

rights under the NVRA. Defendant's conduct harms Plaintiffs because it adversely affects Plaintiffs' ability to fulfill their organizational goals of registering voters, ensuring that all eligible citizens can participate in the political process, and creating politically active communities.

44.     Defendant's unlawful purges further harm and threaten imminently to harm Plaintiffs because the purges undermine Plaintiffs' registration efforts, place undue burdens on and impediments to the registration process, and require Plaintiffs to expend limited resources responding to and taking measure to counteract the unlawful purges.

45.     By depriving registered voters and qualified citizens who sought to register of the NVRA's safeguards prior to removing their names from the voting rolls, Defendant's actions create the real and immediate risk that the Colorado members of Common Cause and SEIU and the voters registered and serve by Mi Familia and SEIU will be deprived of their right to vote on November 4, 2008.

46.     Moreover, unless and until they are remedied, Plaintiffs and the communities they serve will continue to suffer these harm even after the November 4 election. Many absentee voters who have been erroneously removed from the registration list will never know they have been struck off the rolls. Moreover, the harm to Plaintiffs' registration efforts and the diversion of Plaintiffs' resources are ongoing harms that Plaintiff will continue to suffer unless and until they are remedied.

47.     Absent this Court's intervention, Plaintiffs and the Colorado members of Common Cause and SEIU will suffer irreparable injury as a result of Defendant's interference with their federal rights.

48.     Plaintiffs, the Colorado members of Common Cause Cause and SEIU, and the voters registered by Mi Familia and SEIU have no adequate remedy at law for the deprivation of federal voting rights and interference with Plaintiff organizations' ability to carry out their voter registration and education goals caused by Defendant's actions.

49.     Defendant's conduct must be preliminarily and permanently enjoined and Defendant must be ordered to reinstate all improperly purged voters as soon as possible.

## COUNT 2

### (Violation of the NVRA and 42 U.S.C. § 1983 – Cancellation Procedure)

50.     Plaintiffs repeat and reallege the preceding allegations as though fully set forth herein.

51.     Section 8(d) of the NVRA grants a right to voters by expressly prohibiting a state from removing a voter's name from the voter rolls based on returned mail until the voter confirms his or her change of address in writing or, in the event that a notice is sent and the voter fails to respond to it, until after the period of two general election cycles has expired ("NVRA Safeguards").  42 U.S.C. § 1973gg-6(d).

52.     Once a registrant is an officially registered voter, Section 8(d) of the NVRA provides the only method by which such name may be removed on the ground that the registrant has changed residences.

53.     C.R.S. 1-2-509(3) deprives voters of the NVRA safeguards because it provides that a voter will be immediately removed from the list of eligible voters if the voter's notification of registration is returned to the county clerk as undeliverable.

22842582v5

54.     C.R.S. 1-2-509(3) is invalid on its face because it is inconsistent with the NVRA in that it provides a mechanism to eliminate voters from the eligible voter lists outside of the limited methods prescribed by § 1973gg-6(d).

55.     In addition, .R.S. 1-2-509(3) is invalid as applied to individual voters and members of Plaintiff organizations because it has in fact resulted in the removal of eligible voters from Colorado's voter registration list.   Enforcement of C.R.S. 1-2-509(3) has already resulted in harm to these eligible voters who have been purged without notice upon the return of a notice as undeliverable.   Moreover, continued enforcement the statute threatens all voters whose registrations were received within 20 business days of November 4, 2008 even if they have not yet been purged.   Each and every one of these voters faces the risk that, before the election and within the 20-day period, her notification card will be returned as undeliverable and she will be purged without notice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court issue an order:

a.      preliminarily and permanently enjoining and restraining Defendant from removing or cancelling the names of any voters from Colorado's statewide voter registration list pursuant to C.R.S. 1-2-509(3), in violation of 42 U.S.C. § 1973gg-6(d);

b.      preliminarily and permanently enjoining and restraining Defendant from removing or cancelling the names of any voters from Colorado's statewide voter registration list between now and November 4, 2008, for any reason not provided for in 42 U.S.C. § 1973gg-6(c)(2)(B);

c.      requiring Defendant to reinstate the names of any and all voters who were removed or cancelled from the official list of eligible voters since May 13, 2008, for any reason not provided for in 42 U.S.C. § 1973gg-6(c)(2)(B), and permit such voters who appear at the polls on Election Day with appropriate identification in conformance with Colorado law to vote by regular ballot;

d.      requiring Defendant to reinstate the names of any and all voters who were removed or cancelled from the official list of eligible voters in violation of 42 U.S.C. § 1973gg-6(d) and permit such voters who appear at the polls on Election Day with appropriate identification in conformance with Colorado law to vote by regular ballot;

Plaintiffs further request that the Court:

e.      Award Plaintiffs their attorneys' fees and costs in accordance with 42 U.S.C. § 1988 and 42 U.S.C. § 1973gg-9(c); and

f.      Grant Plaintiffs such additional relief as the interests of justice may require, together with their costs and disbursements in maintaining this action.

22842582v5

Dated: October, 24, 2008

Respectfully Submitted,

Common Cause of Colorado
1536 Wynkoop St. # 102
Denver, CO 80202

By _____/s/  S. Gale Dick_____
James E. Johnson
S. Gale Dick
DEBEVOISE & PLIMPTON LLP

Mi Familia Vota Education Fund
2525 West Alameda Avenue
Denver, CO 80219

919 Third Avenue
New York, New York 10022
Tel: 212-909-6000
Fax: 212-909-6836

Service Employees International Union
1800 Massachusetts Ave., N.W.
Washington, D.C. 20036

jejohnsn@debevoise.com
sgdick@debevoise.com

22842582v5

Richard Rosenblatt
RICHARD ROSENBLATT & ASSOCIATES,
L.L.C.
8085 East Prentice Avenue
Greenwood Village, Colorado 80111
Tel: 303-721-7399 x11
Fax: 720-528-1220
rrosenblatt@cwa-union.org


Penda D. Hair
Elizabeth S. Westfall
Jessie Allen*
ADVANCEMENT PROJECT
1730 M Street, NW #910
Washington, D.C. 20036
Tel: 202-728-9557
Fax: 202-728-9558
phair@advancementproject.org
ewestfall@advancementproject.org
jessieallen101@gmail.com
* Not admitted in the District of Columbia


Wendy Weiser
Myrna Pérez
Jennifer Rosenberg
Brennan Center for Justice at NYU School of
Law
161 Avenue of the Americas
12th Floor
New York, New York 10013
Tel: 212-998-6284
Fax: 212-995-4550
wendy.weiser@nyu.edu
myrna.perez@nyu.edu
jennifer.rosenberg@nyu.edu

Stephen P. Berzon
Stacey M. Leyton
Barbara J. Chisholm
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Tel: 415-421-7151
Fax: 415-362-8064
sberzon@altshulerberzon.com
sleyton@altshulerberzon.com
bchisholm@altshulerberzon.com


Karen Neuman
Sarah Brannon
FAIR ELECTIONS LEGAL NETWORK
1730 Rhode Island Avenue, NW
Suite 712
Washington, D.C. 20036
Tel: 202-331-0114
Fax: 202-331-1663
kneuman@fairelectionsnetwork.com
sbrannon@fairelectionsnetwork.com


*Attorneys for Plaintiffs Common Cause of
Colorado, Mi Familia Vota Education Fund,
and Service Employees International Union*

22842582v5