**EXHIBIT 1**

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into between Common Cause of Colorado, on behalf of itself and its members ("Common Cause"), Mi Familia Vota Education Fund ("MFV"), and Service Employees International Union, on behalf of itself and its members ("SEIU"), Plaintiffs, and Bernie Buescher, in his official capacity as Colorado Secretary of State ("the Secretary"), Defendant. Collectively, all of the above are referred to herein as "the Parties."

All references herein to the "Amended Complaint" and the "Counts" are to *Common Cause et al. v. Buescher*, 08-cv-2321-JLK-KMT, in the U.S. District Court for the District of Colorado. This Agreement settles Counts II, III and IV of the Amended Complaint.

## RECITALS

A. <u>Identity of the Parties</u>.

　　i.　Plaintiff Common Cause is a non-profit organization whose purposes include strengthening public participation in government, the promotion of fair elections and high ethical standards for government officials, and the protection of civil rights and civil liberties of all Americans."

　　ii.　Plaintiff MFV is a non-partisan civic engagement campaign working with Latino and immigrant families to bring positive change to their communities and improve their lives.

　　iii.　Plaintiff SEIU is a labor union representing employees working in the fields of healthcare, property services, and the public sector, which works to ensure that working people are empowered to participate in the political process and to elect government, including through voter registration.

　　iv.　Defendant Bernie Buescher is the Colorado Secretary of State.

*Common Cause, et al. v. Buescher,* Settlement Agreement
Page **1** of **13**

B. <u>Definitions</u>

    i.   "Plaintiffs' Affiliates" shall mean: 1) members of the Plaintiffs' organizations, and 2) members of the general public who registered through one or more of the Plaintiffs' voter registration drives.

    ii.   "Duplicate Cancellation" shall mean a cancellation of a registration pursuant to §§ 1-2-604, 1-2-303, C.R.S. (2009), and Election Rule 2.21 after a county concluded that the registration belonged to an individual who had more than one eligible registration in the State of Colorado.

    iii.   "Consolidation" shall mean the act of combining multiple registration records belonging to a single elector into one record in the elector's current county of residence.

    iv.   "Duplicate Registration" shall mean a registration that meets the matching criteria with another existing registration pursuant to § 1-2-604, C.R.S. (2009), and Election Rule 2.21.

    v.   "Unconsolidate" shall mean the act of reversing a Consolidation. When a record is unconsolidated, no additional changes to the status of the record are made.

    vi.   "Reversal of a Duplicate Cancellation" shall mean the act of reversing the cancellation of a duplicate registration that is currently in that same cancelled status. No additional changes to the status of the record are made.

    vii.   "Status Change from 'Inactive-NCOA' to 'Inactive-Failed to Vote'" shall mean the act of changing records currently in "Inactive-NCOA" status to "Inactive-Failed to Vote" status. No additional changes to the status of the record are made.

    viii.   "Eligible registration" and "eligible record" shall mean a registration record that remains in an active or inactive status.

C. <u>Background</u>

    i.   On October 24, 2008, Plaintiffs filed this action against Colorado Secretary of State Mike Coffman, seeking both prohibitory and mandatory injunctive relief.

*Common Cause, et al. v. Buescher,* Settlement Agreement
Page **2** of **13**

ii. The Complaint asserted that the Secretary violated the National Voter Registration Act of 1993 in two ways, by: (1) unlawfully removing registered voters from Colorado's official voter registration list within 90 days of a federal primary or general election, in violation of 42 U.S.C. § 1973gg-6(c)(2)(A); and (2) "cancelling" new "registrations" in violation of 42 U.S.C. § 1973gg-6(d) when a notice sent to the applicant by non-forwardable mail is returned as undeliverable within 20 days, pursuant to § 1-2-509(3), C.R.S. (2009).

iii. Plaintiffs filed an Amended Complaint on April 13, 2009.

iv. Among other things, the Amended Complaint challenged the rules and/or policies adopted by the Secretary for conducting list maintenance and cancelling certain registrations within the 90-day window prior to an election (Count II); for cancelling duplicate registrations (Count III); and the procedures for handling inactive voters, (Count IV).

v. In May 2009, the Secretary adopted Election Rules 2.18 and 2.20.

vi. Rule 2.18 was intended to clarify the list maintenance process required by the NVRA and by Colorado statute and to ensure that electors are never canceled solely for failing to vote.

vii. Rule 2.20 defined active, inactive, and cancelled status designations, as well as the effect of each designation on the elector's eligibility to appear on the poll book, receive a mail ballot, and receive election notice mailings. This ensures that inactive-failed to vote electors will continue to receive election notices, stay on the poll book and receive mail-in ballots.

viii. In December 2009, the Secretary adopted Election Rule 2.21, 2.22, and 2.23.

ix. Rule 2.21 clarifies the policy for resolving discrepancies in name, suffix, and address for the purpose of determining whether more than one registration record belongs to the same individual.

x. Rule 2.22 establishes a deadline of ninety days prior to a federal election for processing records in accordance with §1-2-604, C.R.S. In order to permit the counties to complete their ongoing database consolidation efforts, Rule 2.22 does not take effect until January 2012.

xi. Rule 2.23, which will be repealed in January 2012 (when Rule 2.22 will go into effect), requires the county to mail a notification letter to any elector whose registration is consolidated or cancelled as a duplicate

within ninety days prior to a federal election. This requirement is intended to ensure that if any record is consolidated or cancelled incorrectly, the elector will have an opportunity to request reversal of the county clerk's action prior to election day.

xii. On December 8, 2009, the Secretary issued notice of rulemaking, a public hearing for which will be held on February 18, 2010. The proposed rule amendments, if adopted in their current form, will repeal the requirement that the Secretary utilize the National Change of Address Database ("NCOA"), and would also preclude the counties from utilizing the service to update the registration address of any registration record or change the status of an elector to "inactive."

xiii. Colorado's Voter Information Consolidation Effort (VoICE), is the state's ongoing process of consolidating multiple records for the same individual in the elector's county of residence. VoICE follows the minimum matching criteria in §§ 1-2-303 and 1-2-604, C.R.S. (2009), as well as Election Rule 2.21. The Secretary's office conducts an audit of VoICE consolidations on a county-by-county basis.

D. This agreement is made in compromise of disputed claims. This agreement is neither an admission of legal or factual wrongdoing by the Secretary, nor is it a concession by the Plaintiffs that Counts II-IV of the Amended Complaint are not meritorious and well-founded, or that the allegations of those Counts have been resolved. The Secretary expressly denies the allegations of Counts II-IV and denies that he, his predecessor, staff, attorneys, agents, or anyone affiliated in any way with the administration of Colorado's elections has engaged in any wrongful conduct whatsoever in connection with Counts II-IV. Neither this agreement, its execution, nor the performance of any obligation thereunder, nor the fact of settlement, is intended to be, or shall be understood as, an admission of liability or wrongdoing, or other expression reflecting upon the merits of the dispute.

E. The general purposes of this Settlement Agreement are as follows:

i. To resolve the claims asserted in Counts II-IV of the Amended Complaint;

ii. To ensure that Plaintiffs' Affiliates whose records may have been consolidated and cancelled as duplicates without proper application of the matching criteria in §§ 1-2-303 and 1-2-604, C.R.S. (2009), and Election Rule 2.21, and remain in that status, have those records restored to the status extant prior to the duplicate cancellation or consolidation. The Secretary does not intend to reverse a cancellation of a duplicate or Unconsolidate a record if doing so will result in more

than one eligible record for one person. Application of the matching criteria outlined in Election Rule 2.21 and § 1-2-604 are intended to ensure that all electors have only one eligible registration each;

    iii.    To ensure that Plaintiffs' Affiliates whose records are currently in "Inactive-NCOA" status have those records converted to "Inactive-Failed to Vote" status;

    iv.    To provide public notice on the status of the VoICE consolidations; and

    v.    To provide advance written notice to Plaintiffs of proposed rulemakings that would amend Election Rule 2.22.

F.    The Parties acknowledge that the promises and covenants contained herein are good and valuable consideration for all parties' execution of this Agreement.

G.    The Parties acknowledge that this Agreement does not extend to any of the claims asserted in Count I of the Amended Complaint.

H.    To avoid the delay, expense, inconvenience, and uncertainty of protracted litigation of Counts II-IV of the Amended Complaint, the Parties mutually desire to reach a full and final settlement as detailed below.

## TERMS AND CONDITIONS

1.    <u>DISMISSAL OF COUNTS II-IV OF THE AMENDED COMPLAINT</u>. The parties mutually agree to stipulate to the dismissal without prejudice of the Counts II-IV of the Amended Complaint, contemporaneously with the effective date of this Agreement. This dismissal without prejudice will in no way prevent Plaintiffs from asserting these claims or related claims at a subsequent point in time. As set forth below, each party shall be solely responsible for the payment of its own attorney fees and costs of suit incurred with respect to Counts II-IV of the Amended Complaint and the settlement thereof.

2.    <u>REVIEW OF CERTAIN VOTER REGISTRATIONS THAT HAVE BEEN CANCELLED OR CONSOLIDATED</u>. In order to ensure the accuracy of certain voter registrations, the Parties agree as follows:

    i.    Attachments A and B. Plaintiffs have provided a list of Plaintiffs' Affiliates whose registrations have been cancelled ("Attachments A and B") and requested that the Secretary review it to determine whether any duplicate cancellations or consolidations on that list were done in a manner inconsistent with Election Rule 2.21, and §§ 1-2-604 and 1-2-303, C.R.S. (2009). The Secretary agrees to review this list and

*Common Cause, et al. v. Buescher,* Settlement Agreement
Page **5** of **13**

    determine the whether duplicate cancellations and/or consolidations were done consistently with Election Rule 2.21, and §§ 1-2-604 and 1-2-303, C.R.S. (2009). If the Secretary determines that any registration on Attachments A and B is currently in cancelled status, and was cancelled or consolidated as a duplicate without meeting the criteria of Election Rule 2.21, and §§ 1-2-604 and 1-2-303, C.R.S. (2009), the Secretary shall order that the record be Unconsolidated or the cancellation to be reversed, and restored to the status extant prior to the duplicate cancellation or consolidation.

ii. <u>Attachment C</u>. Plaintiffs have provided a list Plaintiffs' Affiliates whose registrations may currently be in "Inactive-NCOA" status in SCORE ("Attachment C"). The Secretary agrees to review the list provided by Plaintiffs, and to order that any records currently in that registration status are converted from "Inactive-NCOA" to "Inactive-Failed to Vote." The Secretary shall not be required to undertake any other review of such records.

iii. <u>Audit of accuracy of VoICE procedure</u>. The Secretary shall continue the VoICE audit procedure initiated in 2009, which is designed to ensure the accuracy of the counties' efforts to consolidate duplicate registrations.

iv. <u>The Secretary's review of Attachments A, B, and C</u>. The Secretary shall review Attachments A, B, and C, and shall notify the Plaintiffs in writing of the disposition of each registration on each of the lists by 5 p.m. MST on March 31, 2010. If the Secretary declines to order, as relevant:

    i. Unconsolidation of a duplicate record;

    ii. reversal of a Duplicate Cancellation,

    iii. the status conversion to "Inactive-Failed to Vote,"

of any of the registrations on any of the lists, the Secretary shall briefly explain his reason for that decision in writing, and provide documentation relied upon to reach that decision. The parties acknowledge this may require the disclosure of confidential information. In order to permit such disclosure, the parties shall submit a stipulated protective order to be approved by the Court contemporaneously with dismissal of this action. *See* Attachment D ("Third Stipulated Protective Order").

v. <u>Standard of review</u>. The Secretary's review of Attachments A, B, and C shall not be based on the heightened standard of review contained in the stipulated injunction entered in *Common Cause et al. v. Buescher,* 08-cv-

*Common Cause, et al. v. Buescher,* Settlement Agreement
Page **6** of **13**

2321-JLK-KMT, on or about October 29, 2008, or any other heightened standard of review. Rather, the Secretary shall apply the same standard as applies to all Colorado voter registrations under Colorado law.

vi. <u>Requests for reconsideration</u>. If any of the Plaintiffs disagree with the Secretary's decision not to order Unconsolidation of a duplicate record, reversal of a Duplicate Cancellation, or the status conversion to "Inactive-Failed to Vote" of any registration on Attachments A, B, and C, Plaintiffs may request that the Secretary reconsider his decision with respect to that registration. Plaintiffs may also request additional supporting documentation that they believe is necessary to their review of the Secretary's decision. Such requests shall be made in writing and shall be limited to records of the elector(s) whose registration is in dispute. Upon receipt of such a request from Plaintiffs, the Secretary shall consider any facts, arguments, and authorities relied upon in the request for reconsideration. If the Secretary agrees with the Plaintiffs' position he shall order Unconsolidation of a duplicate record, reversal of a Duplicate Cancellation, or status conversion to "Inactive-Failed to Vote." If he does not agree, he shall provide a written explanation for his decision. Any requests for reconsideration pursuant to this subparagraph must be submitted by Plaintiffs by 5 p.m. MST on Friday, April 16, 2010. The Secretary shall submit his decision to the Plaintiffs concerning any request for reconsideration by 5 p.m. MST on Friday, April 30, 2010. Requests for reconsideration and the Secretary's response to such requests may be submitted by electronic mail.

vii. <u>Judicial resolution</u>. If, after requesting reconsideration of a registration pursuant to immediately preceding subparagraph, any of the Plaintiffs believes that the Secretary has incorrectly declined to order Unconsolidation of a duplicate record, reversal of a Duplicate Cancellation, or status conversion to "Inactive-Failed to Vote" pursuant to Election Rule 2.21, and §§ 1-2-604 and 1-2-303, C.R.S. (2009), Plaintiffs may file a civil action against the Secretary pursuant to § 1-1-113, C.R.S. (2009). The Parties agree that filing suit under § 1-1-113 shall be the sole remedy for adjudication of a dispute arising under the review process outlined in this Paragraph 2. Venue for an action filed under § 1-1-113 shall be the District Court for the City and County of Denver, Colorado. The Plaintiffs expressly agree that § 1-1-113 shall represent the sole and exclusive avenue for relief should they disagree with a decision by the Secretary not to grant Unconsolidation of a duplicate record, reversal of a Duplicate Cancellation, or the status conversion to "Inactive-Failed to Vote."

viii. <u>Exhaustion of remedies condition precedent to civil suit</u>. A request for reconsideration of a decision not to grant Unconsolidation of a duplicate

*Common Cause, et al. v. Buescher*, Settlement Agreement
Page 7 of 13

record, reversal of a Duplicate Cancellation, or the status conversion to "Inactive-Failed to Vote" of a particular registration – and the Secretary's timely written affirmation of that decision – shall be a condition precedent to filing a civil action regarding a particular registration pursuant to § 1-1-113.

    3.   RULEMAKING. The Parties acknowledge that recent rulemaking activity by the Secretary has addressed some of the policy concerns set forth in Counts II-IV of the Amended Complaint. The Parties acknowledge further that Rule 2.22, which establishes a deadline of ninety days prior to a federal election for processing duplicate records for the same elector, does not go into effect until January 1, 2012. With respect to only Rule 2.22, the Secretary agrees as follows:

    a. The Secretary shall, once during December 2010 and once during September 2011, develop and publish reports on the status of the VoICE consolidation process. These reports shall be made available to public, and will contain information concerning the numbers of records consolidated, and the numbers of groups of registration records remaining to be reviewed for duplicate consolidation.

    b. If the Secretary determines that non-technical amendments should be made to Rule 2.22, the Secretary shall provide advance written notice of pending rulemaking proceedings to Plaintiffs and/or Plaintiffs' counsel. Such notice shall be provided at least 90 days before the notice of rulemaking is issued. An example of a technical amendment is re-numbering or re-locating the rule; an example of a non-technical amendment is amending the date on which Rule 2.22 becomes effective. The Secretary agrees to confer in good faith with Plaintiffs concerning any rule changes contemplated by this subparagraph prior to the issuance of the formal notice of rulemaking.

    c. Nothing in this Agreement shall prevent or inhibit the Secretary's ability to adopt emergency rules pursuant to the Colorado Administrative Procedure Act as may be required by changes in federal or state law.

    d. The advance notice requirements contained in this paragraph shall terminate on January 1, 2013.

    4.   REPORTS OF TRANSFERS. The Secretary shall, once during December 2010 and once during September 2011, develop and provide to Plaintiffs a report indicating the number of changes in registration records that resulted in the transfer of a registration record from one county to another. For purposes of the December 2010 report, the information provided will include such numbers from January 1, 2010 to December 2010. For purposes of the September 2011 report, the information provided will include such number from the date of the December 2010 report to September 2011.

5. **NOTICE.** Unless otherwise stated herein, any notice or decision required under this Agreement may be provided via electronic mail to counsel of record.

6. **NO ADMISSION OF LIABILITY.** This Agreement is entered into for the purposes of avoiding further litigation and does not constitute an admission of liability or evidence of any wrongdoing or omission of any kind. This Agreement shall not be offered or received into evidence or otherwise filed or lodged in any proceeding against any party except as may be necessary to prove or enforce its terms.

7. **OPEN RECORDS REQUIREMENTS.** The Parties understand and agree that the State of Colorado and its agencies and departments are bound by applicable public disclosure laws, including without limitation, the provisions of the Colorado Open Records Act, § 24-72-201, *et seq.*, C.R.S., as presently or subsequently amended, and that the State of Colorado may be required to disclose this Agreement in its entirety if requested to do so under such statutes. This Agreement will not hold the Secretary, or his administrators, officers, agents, or employees, liable for release of public records under such statutes.

8. **INTEGRATION.** This Agreement constitutes the entire agreement of the parties regarding the subject matter hereof. The terms of this Agreement are contractual in nature and not mere recitals. As such, the parties understand, acknowledge and agree that this Agreement is fully integrated and supersedes all previous oral or written agreements of the parties.

9. **BINDING EFFECT.** This Agreement shall inure to the benefit of, and be binding upon, the heirs, successors, assigns and legal representatives of the parties and any third party beneficiaries.

10. **GOVERNING LAW.** This Agreement is entered into in Colorado, and shall be governed by the laws of the state of Colorado.

11. **HEADINGS.** The headings used in this Agreement are for the convenience of the parties only. As such, these headings shall not have any legal effect whatsoever or, in any other way alter or modify the meaning or interpretation of this Agreement.

12. <u>SEVERABILITY</u>. If any provision of this Agreement should be declared to be unenforceable, the remainder of this Agreement shall continue to be binding upon the parties.

13.

14. <u>COSTS AND ATTORNEY FEES</u>. The parties agree that each shall bear their or its own costs and attorney fees related to Counts II-IV of the Amended Complaint.

15. <u>WARRANTIES AND REPRESENTATIONS</u>. Plaintiffs represent and warrant that they have not assigned or transferred any claim for costs or attorneys fees related to Counts II-IV of the Amended Complaint to any third party and that no third party has been subrogated to their interest in such costs or attorneys fees purported to be released hereby, or, if any third party has been subrogated to Plaintiffs' interest, the interest of any subrogee has been settled, compromised, and extinguished. Plaintiffs agree to defend and indemnify the Secretary, his members, officers and employees, and to hold them harmless against claims to costs and attorneys fees related to Counts II-IV of the Amended Complaint of any assignee or subrogee that may hereafter be asserted. Plaintiffs are responsible for the payment of any outstanding liens against this settlement.

16. <u>ADVICE OF COUNSEL</u>. The Parties represent that (a) they have relied upon the advice of attorneys and/or other consultants of their own choice concerning the legal consequences of this Agreement, (b) this Agreement has been thoroughly read by the Parties and its terms have been explained to them to their satisfaction by an attorney or attorneys of their choice, and (c) the terms of this Agreement are fully understood and voluntarily accepted by the Parties. The Parties further understand and agree that this Agreement shall be forever binding and that no cancellation, rescission, or modification of, or release from the terms of, this Agreement shall be made based upon any mistake of fact or of law.

17. <u>EXECUTION IN COUNTERPARTS</u>. This Agreement may be executed in counterparts, each of which shall have full force and effect upon execution by all parties to this Agreement, but which together shall constitute a single instrument.

18. <u>FACSIMILE SIGNATURES</u>. Original signatures are required, but copies of original signatures transmitted by facsimile or electronic mail shall be binding and admissible.

19. <u>AMENDMENTS.</u>. To be binding, amendments to this agreement must be in writing and agreed to and signed by duly authorized representatives of both the Plaintiffs and the Secretary.

20. <u>AUTHORIZATION OF SIGNATORIES</u>. By their signatures below, counsel for the parties specifically affirm that they are duly authorized to enter into this agreement on behalf of the parties and that they have ensured that the parties are fully aware of the terms of this agreement.

WHEREFORE, the parties agree to and do accept the terms of this Agreement as evidenced by their respective signatures on the following pages.

Date: January 21, 2010

        Monica M. Marquez
        Maurice G. Knaizer
        Melody Mirbaba
        Matthew D. Grove
        Office of the Attorney General
        1252 Sherman Street, 2nd Floor
        Denver, Colorado 80203
        Phone: 303-866-4500
        Facsimile: 303-866-4765

        *Attorneys for Defendant Secretary of State*

Date: January 21, 2010

        Stephen P. Berzon
        James M. Finberg
        Stacey M. Leyton
        Barbara J. Chisholm
        ALTSHULER BERZON LLP
        177 Post Street, Suite 300
        San Francisco, California 94108
        Tel: 415-421-7151
        Fax: 415-362-8064
        sberzon@altshulerberzon.com
        jfinberg@altshulerberzon.com
        sleyton@altshulerberzon.com
        bchisholm@altshulerberzon.com

        James E. Johnson

*Common Cause, et al. v. Buescher*, Settlement Agreement
Page 11 of 13

S. Gale Dick
Elaina J. Loizou
Stuart Naifeh
Doug Cuthbertson
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel: 212-909-6000
Fax: 212-909-6836
jejohnsn@debevoise.com
sgdick@debevoise.com
eloizou@debevoise.com
snaifeh@debevoise.com
dcuthbertson@debevoise.com

Richard Rosenblatt, Esq.
RICHARD ROSENBLATT &
ASSOCIATES, L.L.C.
8085 East Prentice Avenue
Greenwood Village, Colorado 80111
Tel: 303-721-7399 x11
Fax: 720-528-1220
rrosenblatt@cwa-union.org

Penda D. Hair
Elizabeth S. Westfall
Bradley Heard
ADVANCEMENT PROJECT
1730 M Street, NW #910
Washington, D.C. 20036
Tel: 202-728-9557
Fax: 202-728-9558
phair@advancementproject.org
ewestfall@advancementproject.org
bheard@advancementproject.org

Wendy Weiser
Myrna Pérez
BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
161 Avenue of the Americas, 12th Floor
New York, New York 10013
Tel: 212-998-6284
Fax: 212-995-4550

wendy.weiser@nyu.edu
myrna.perez@nyu.edu

Brian Siebel
Karen Neuman
Sarah Brannon
FAIR ELECTIONS LEGAL NETWORK
1730 Rhode Island Avenue, NW, Suite 712
Washington, D.C. 20036
bsiebel@fairelectionsnetwork.com
kneuman@fairelectionsnetwork.com
sbrannon@fairelectionsnetwork.com

*Attorneys for Plaintiffs Common Cause of Colorado, Mi Familia Vota Education Fund and Service Employees International Union*