IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **08-cv-2321-JLK**

**COMMON CAUSE OF COLORADO, et al.**,

        Plaintiffs,

v.

**BERNIE BUESCHER, in his official capacity as Secretary of State for the State of Colorado,**

        Defendants.
_____

**ORDER DENYING MOTION FOR INTERIM RELIEF (DOC. 171)**
_____

Kane, J.

After a series of Colorado Election Rule amendments and changes resulted in a stipulated dismissal of three of Plaintiffs' five federal challenges to Colorado's voter registration laws and list maintenance practice, only one claim remains in this case. That claim, in which Plaintiff voter rights and labor organizations contend Colorado's "20-day Rule" for invalidating a voter's registration if a notification card sent to the address provided on the registration application is returned as undeliverable, C.R.S. § 1-2-509(3), violates § 8 of the National Voter Rights Act of 1993, is pending before me on cross-motions for summary judgment. Given the approaching federal election, Plaintiffs now also move for interim relief in the form of a preliminary injunction (1) requiring the Secretary "immediately [to] make 'active' all registration records cancelled from [Colorado's electronic voter registration] database pursuant to [the] '20-day Rule' . . . that remain in "Failed 20-day" status"; and (2) to "mail ballots to all such voters who requested mail-in ballots." *See* Mot. for Interim Relief (Doc. 171) and Proposed Order (Doc. 171-1). I DENY the Motion.

*Legal Standard.*

To obtain a preliminary injunction in this circuit, a movant must establish the following four factors:

- That the movant will suffer irreparable injury unless the injunction issues;

- That the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and

- A showing that the injunction, if issued, would not be adverse to the public interest;

- A substantial likelihood that the movant will eventually prevail on the merits.

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)(applying standard articulated in *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980)). The purpose of a preliminary injunction under Fed. R. Civ. P. 65 is to preserve the status quo between the parties pending final determination on the merits of an action. *University of Texas v. Camenisch*, 451 U.S. 390 (1981).

A preliminary injunction alters the rights of the parties, affording the movant a form of relief before he has proven his case. Because it "is an extraordinary remedy," a preliminary injunction will not issue unless the right to relief is "clear and unequivocal." *SCFCILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098-99 (10th Cir.1991). *Accord Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005). In prohibitory injunction where the movant seeks only a cessation of activity to return to the status quo, emphasis is on the balance of harms and the "likelihood of success" requirement may be satisfied by merely raising "so serious, substantial, difficult and doubtful as to make the

issues ripe for litigation and deserving of more deliberate investigation." *Walmer v. United States Dept. of Defense*, 52 F.3d 851, 854 (10th Cir. 1995). Injunctions that disturb the status quo, that are mandatory rather than prohibitory, or that afford the movant "substantially all the relief he may recover at the conclusion of a full trial on the merits" are particularly disfavored, *SCFCILC* at 1098-99, and will not be granted unless a movant makes a "strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.*, *as modified by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975-77 (10th Cir. 2004)(en banc).

*Discussion.*

The substance of Plaintiffs' legal challenge to the 20-day Rule has been well briefed and a ruling on the merits of that challenge will issue in the next few days. Because the relief sought is substantially all of the relief to which Plaintiffs would be entitled if they succeed fully on the merits of their claims, Plaintiffs must make a strong showing not only that the balance of harms weighs heavily in their favor, but also of their likelihood of the success on the merits. They have done neither.

The gist of Plaintiffs' assertion of irreparable harm is that nearly 6000 new registrants in Colorado since November 2008 have had their registrations cancelled, and their voting designations changed from "active – 20 day" to "failed - 20 day," by operation of the 20-day Rule. Plaintiffs argue that if these registrants' status is not reactivated before the November 2010 election, they will suffer irreparable harm to their fundamental right to vote. When pressed, Plaintiffs concede the harm alleged, given that we are fewer than 28 days from the election, means cancelled 20-day voters will either have to return confirmation cards that should

have been sent pursuant to new Election Rule 2.17 to those voters cancelled since February 19, 2010; appear in person at their local county clerks' offices and confirm their addresses (and thereby be entitled to cast a regular, active-status ballot); or appear at the polls on election day and cast a provisional ballot. It is undisputed in this case that any provisional ballot of a "cancelled"/"Failed - 20 day" voter who presents identification and confirms his address at the polling station will be counted.

The only individual mentioned at Friday's hearing on the subject of irreparable harm was SEIU member Antonio Lewis, who Plaintiffs assert is in "cancelled"/"Failed-20 day" status on SCORE as a result of a one-digit transposition of his mailing address and "will not" therefore be able to vote if he goes to the polls on November 2d. When asked whether Mr. Lewis or any of the other 6000 affected individuals had taken steps to correct their voting status before this November's election independently of any preliminary or permanent injunctive relief that may be ordered, counsel had no answer other than to suggest that any requirement that Mr. Lewis or anyone else return confirmation cards, appear in person at county clerk offices, otherwise amend or correct their active registrations, or, in the alternative, vote provisionally, still burdens what is a fundamental right and therefore constitutes irreparable harm.

Plaintiffs also contend Plaintiff organizations themselves will suffer irreparable harm in the form of a loss of confidence in the political system that the marginalized communities they represent will experience in the absence of the requested relief.

Against these harms I weigh the effect of any order requiring the State to activate the registrations of nearly 6000 voters, who have been sitting in "cancelled" status in the SCORE database for up to two years, and to send mail ballots to those of the 6000 "who have requested

4

mail-in ballots." Counsel for the State concedes it is possible to redesignate voters from "cancelled" to "active" status in the SCORE database before the election, but that this would have to be done manually. A requirement that county clerks must then also identify those of the 6000 reactivated voters who may at one time have "requested" a mail-in ballot is likely impossible because no records of such requests exist and because Plaintiffs offer no logical means otherwise to achieve it.[1]

With regard to the public interest, Plaintiffs simply posit that protecting fundamental voting rights is in the public interest. This is axiomatically true. It is also true, however, that the relief requested – a wholesale redesignation of 6000 "cancelled"/"Failed - 20 day" voters whose application addresses were erroneously given or recorded to "active" status – deprives the State of an important means of effecting its mandate to register only eligible voters and to ensure accuracy in its voter rolls. The NVRA contemplates that states will enact programs to confirm voter eligibility and registration. By preventing election officials from being able to confirm the eligibility of those 6000 "cancelled" registrants for the two-year period contemplated by NVRA § 8(d), the relief requested adversely impacts the public interest.

I am unable, based on the arguments made and the record before me, to conclude that Plaintiffs have made a strong, or even a colorable, showing that the balance of harms weighs in

---

[1] There is no evidence in the record, and no verbal proffer was made at Friday's hearing, that any member of the group of 6000 currently "cancelled"/"Failed-20 day" voters has either asked for a mail-in ballot or was denied one on the basis of that status. To the extent any "cancelled" voter wrote to request a mail-in ballot, that request would be tantamount to initiating a new registration and that voter could have completed that registration and have already become an active voter by taking that action on his own. And how are the various Colorado county clerks supposed to identify, without the help of Plaintiffs, any of the "cancelled" voters who may have contacted them for a mail-in ballot? Without any assistance from Plaintiffs, there is no meaningful way to afford the relief requested.

favor of the interim relief requested.  This alone provides the basis for denying Plaintiffs' Motion.  With regard to the merits of Plaintiffs' legal challenge to Colorado's 20-day Rule, which will be discussed with greater specificity in the forthcoming decision on the cross-motions for summary judgment, suffice it to say that Plaintiffs have not made a "strong" showing of a likelihood of success.  That a "cancellation" of a registration that was activated on a presumption of eligibility for a 20 day period technically "removes" that registrant's name from Colorado's official list of eligible voters does not mean that this removal violates § 8(d) of the NVRA.  Plaintiffs have not demonstrated that § 8(d) – prohibiting the removal of an eligible voter from the voter rolls on the basis of changed residence for a minimum of two election cycles – even applies to registration confirmation provisions such as Colorado's 20-day Rule, and, to the extent § 8(d) does apply, that the Rule, as implemented, violates that section as it must be read in the context of § 8 generally.

Because Plaintiffs have failed to make a strong showing either a likelihood of success on the merits or that the balance of harms in failing to reactivate the 20-day registrations of 6000 "cancelled"/"Failed 20-day" voters weighs in Plaintiffs favor, the Motion for Interim Relief (Doc. 171) is DENIED.

Dated October 18, 2010.                                          **s/John L. Kane**
                                                                 SENIOR U.S. DISTRICT JUDGE